# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-197

**OWNERS INSURANCE COMPANY**                                    **PLAINTIFF**

v.

**ELDER HEATING & AIR, INC., et al.**                           **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court upon a Joint Motion to Dismiss by Defendants PLC, Inc. and Illinois Union Insurance Company (Docket #11). Defendants Vishnu, LLC and Harry Parmar have also joined in said motion (Docket #12). Plaintiff has responded (Docket #15). Defendants have not replied. This matter is now ripe for adjudication. For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

Vishnu, LLC ("Vishnu") hired PLC, Inc. ("PLC") as construction manager for the construction of a Comfort Suites hotel in Hopkinsville, Kentucky. As General Contractor, PLC subcontracted with Elder Heating & Air, Inc. ("Elder") to perform certain HVAC work. In the contract between PLC and Elder, Elder agreed to add PLC as an additional insured to its General Liability Insurance Policy. Elder carried this coverage through Owners Insurance Company ("Owners"). Under the Policy, Owners agreed to pay for the insured's legally obligated damages due to bodily injury or property damage. Owners also agreed to the right and duty to defend the insured against lawsuits seeking such damages.

In February of 2009, Harry Parmar ("Parmar") contacted Illinois Union, PLC's general liability insurance carrier. Parmar reported that the ceiling above the swimming pool at the

Comfort Suites hotel had collapsed.  Illinois Union notified Owners for confirmation from Owners that PLC was an additional insured under Elder's policy, and that Owners would defend and indemnify.  Parmar notified Illinois Union on March 17, 2009, that he was also injured by debris from the ceiling collapse.  On May 13, 2009, Owners informed Illinois Union that the damage at the hotel was not caused by Elder.  Illinois Union responded with a request for an explanation of PLC's status under the Policy.

Owners filed a declaratory judgment action with this Court seeking a declaration that it has no duty to defend or indemnify PLC for the damages claimed by Parmar and Vishnu on November 18, 2009.  PLC and Illinois Union filed a joint motion to dismiss on January 22, 2010.  Also on January 22, 2010, Parmar and Vishnu filed suit against Elder, PLC, and Leon K. Lauver & Associate, Inc., in the Christian Circuit Court.  Vishnu and Parmar joined the motion to dismiss the declaratory judgment action in this Court on January 26, 2010.  The first part of the motion to dismiss seeks dismissal based on lack of subject matter jurisdiction.  Defendants argue that because no underlying lawsuit has been filed by Vishnu or Parmar, there is no "actual controversy."  The motion to dismiss was filed on the same day that Vishnu and Parmar filed their lawsuit in state court.  Therefore, this issue is now moot and the Court will not consider it.  Defendants second argument is that the Court should exercise its discretion and decline to entertain this declaratory action.

## STANDARD

The Declaratory Judgment Act ("Act") states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration. . . . Any such declaration shall

have the force and effect of a final judgment . . . and shall be reviewable as such." 28 U.S.C. §2201(a). The Act is an enabling act, which extends the jurisdiction of the Court beyond the jurisdictional basis initially required. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). While this Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. A district court may not decline jurisdiction, however, as a matter of whim or personal disinclination. *Mercier,* 913 F.2d at 277.

In determining whether the exercise of jurisdiction is proper, the Court must consider five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). In the determination of factor number four, three additional factors are considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

**DISCUSSION**

I.  **Settlement of the Controversy**

In order to determine whether the Court should decline to exercise jurisdiction, the Court must look at the five factors set out above. Recently, the Sixth Circuit issued an opinion in *Scottsdale Ins. Co. v. Flowers*, "to clarify our precedent regarding the discretionary exercise of the jurisdiction granted by the Declaratory Judgment Act." 513 F.3d 546, 554 (6th Cir. 2008). While this opinion did not overrule prior opinions on this topic, it has become the standard in this Circuit and has expressly set forth the tests to be used by district courts making this determination.

First, the Court must determine whether the declaratory action would settle the controversy. As explained by the Sixth Circuit in *Flowers*, there are two lines of precedent regarding the first factor. 513 F.3d at 555. "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* However, another set of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* The Sixth Circuit examined these cases and explained that the differences between the two lines of precedent were the different factual scenarios presented. *Id.* In *Bituminous*, the Court was faced with an action in which determination of the insurance coverage issue rested on a fact-based question of state law which was already being considered in two other state court proceedings. *Id.* at 555-56 (citing *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813-14 (6th Cir. 2004)). In

*Northland*, however, the insurer was not a party to the state court action so that "neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 556 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). In *Flowers*, the Court concluded that the issue addressed was not before the state court as in *Northland* and there was not a disputed issue of fact that was being addressed by the state court as in *Bituminous*. *Id.* For these reasons, the Court held that the district court's declaratory judgment did settle the controversy between the parties. *Id.*

Defendants argue that the present case would not settle the controversy because the question of whether PLC qualifies as an additional insured under the Policy depends on whether PLC is exposed to liability arising out of Elder's "work." In addition, the issue of whether the damages suffered by Vishnu and Parmar was caused by "mold, rot, or fungi" is a factual question that will be considered by the state court. Defendants believe the answers to these questions are heavily fact dependent, and go to the heart of the underlying state court claims. In contrast, Plaintiff argues that it seeks a determination on the language of the Policy, not a determination of the facts. Further, Plaintiff asserts that it is not a party to the state court action, and the coverage issues will not be resolved by the state court.

The Court finds that the declaratory judgment action would not settle the controversy between the parties. This is a difficult case because both parties are partially correct in their assertions. Plaintiff is not a defendant in the state court action, and the insurance policy is not at issue in that case. The state court complaint contains allegations of breach of contract, negligence, and respondeat superior. Those matters of state law have no bearing on whether the language in the insurance policy covers PLC as an additional insured who is exposed to liability

5

arising out of Elder's "work." In that way, this case is similar to *Flowers* and *Northland*. However, the issue of whether damage occurred because of "mold, rot, or fungi" is factually dependent and, from what the Court can discern from the state court complaint, likely to be a key issue in the state court action. If the damage was caused by "mold, rot, or fungi," Plaintiff has no duty to defend or indemnify PLC. Because of this factual issue, the case is similar to *Bituminous*, which advises the Court to decline jurisdiction. Therefore, this declaratory action would not settle the controversy, and this factor weighs against exercising jurisdiction.

## II. Clarification of the Legal Relations at Issue

The second factor the Court must determine is whether the declaratory judgment will clarify the legal relations at issue. This second factor "is closely related to the first factor and is often considered in connection with it . . . . Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557. The Sixth Circuit explained that similarly to the split that had developed in the first factor, there was a split in precedent concerning the second factor. *Id.* Some cases held that a district court's judgment need only clarify the legal relations presented in the declaratory judgment action, while others held that the judgment must also clarify the legal relations in the underlying state action. *Id.* In *Flowers*, the Sixth Circuit adopted the precedent holding that the judgment of the district court need only clarify the legal relations presented in the declaratory judgment action. *Id.* ("[W]e focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court"). Specifically, the district court must consider whether the district court's judgment will "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.*

6

In this case, just as the declaratory judgment of the Court would not settle the controversy, it would not clarify the legal relationship between the parties to this action. This matter would not resolve, once and finally, the issue of coverage. If this Court were to determine that Plaintiff has a duty to defend and indemnify PLC, it would have to find that the damage to Vishnu and Parmar was not caused by "mold, rot, or fungi." The state court, however, could reach a different finding on this issue, thus conflicting with a ruling from this Court, and changing Plaintiff's indemnity obligations. Therefore, this factor weighs against exercising jurisdiction.

### III. Race for Res Judicata

The third factor for the district court to consider is "whether the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. As the Sixth Circuit explained, this factor is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* The Court is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citing *Travelers Indemnity Co., v. Bowling Green Professional Associates, PLC,* 495 F.3d 266, 272 (6th Cir. 2007)). In *Bituminous*, the Court found that where the state court action was filed two years prior to the declaratory judgment, the Court will give the plaintiff "the benefit of the doubt that no improper motive fueled the filing of this action." 373 F.3d at 814. "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice give by Congress.'" *Flowers*, 513 F.3d at 558 (citing *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d

7

247, 250 n.1 (6th Cir. 1986)).

Defendants do not argue that Plaintiff is using this action for "procedural fencing." If no evidence of procedural fencing or a race for res judicata is presented, then this factor is neutral, and does not weigh in favor of or against exercising jurisdiction. *See, e.g.*, *Travelers Indemnity Co., v. Bowling Green Professional Associates, PLC,* 495 F.3d 266, 272 (6th Cir. 2007); *Grange Mutual Casualty Co. v. Safeco Insurance Co. of America*, 565 F. Supp. 2d 779, 789 (E.D. Ky. 2008).

## IV. Increased Friction between Federal and State Courts

The fourth factor considered by the district court is "whether accepting jurisdiction would increase friction between federal and state courts." *Id.* at 559. "[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). In fact, the Court must look at three other factors in analyzing this factor.

### A. *Resolution of the Factual Issues*

First, the Court must determine whether the state court's resolution of the factual issues is necessary to the district court's resolution of the declaratory judgment. *Flowers*, 513 F.3d at 560. Exercise of jurisdiction is inappropriate if "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (citing *Travelers*, 495 F.3d at 272).

This sub-factor weighs heavily against exercising jurisdiction. This Court and the state court will both have to determine the cause of the collapsed ceiling. In this case, this determination is necessary to decide if the "mold, rot, or fungi" exclusion of the Policy applies

8

and bars PLC from coverage. The state court will have to determine causation for purposes of deciding issues of negligence. Therefore, there is a potential for conflicting findings.

B. *Court in a Better Position to Resolve the Issues in the Declaratory Judgment*

The next sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id.* Generally, state courts are in a better position to decide novel questions of state law. *Id.* It is not required, however, that every time there is an undetermined question of law the federal court must decline jurisdiction. *Id.* If the issues in the district court action are not before the state court and state law is clear, this sub-factor is given less weight. *Id.* "In particular, when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454).

This case does not involve any novel questions of state law. In addition, one of the issues in this case will not be before the state court, and the insurance company is not a party to the state court action. Still, while the scope of insurance coverage is not directly at issue before the state court, the findings of the state court will play a role in determining that scope. Weighing these considerations, the Court finds that this sub-factor is neutral.

C. *Close Nexus between Underlying Facts and Legal Issues and State Law*

The final sub-factor requires the Court to determine whether the issue in the federal action implicates important state policies and therefore would be more appropriate for the state court to address. In *Bituminous*, the Sixth Circuit stated that "insurance contract interpretation [is a] question[ ] of state law with which the Kentucky state courts are more familiar and,

9

therefore, better able to resolve." 373 F.3d at 815. Additionally, the Court explained the public policy reason: "'states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" *Id.* (citing *Mercier*, 913 F.2d at 279). The Court went on to say, "[h]owever, not all issues of insurance contract interpretation implicate such fundamental state polices that federal courts are unfit to consider them." *Flowers*, 513 F.3d at 561. In *Northland*, the Court reasoned that because Northland Insurance was not a party to the state court action and the issues before the federal court were not before the state court, the principles of comity would not be offended. 327 F.3d at 454. On the other hand, in *Flowers*, the Court held that "despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." 513 F.3d at 561.

This case does not involve issues of public policy. Still, Kentucky courts are in a better position to resolve insurance policy interpretations, even in the face of clearly established law on the issue. The state court is also in a better position to consider the factual issues, as causation will be a key element to the underlying claims. Therefore, this sub-factor weighs slightly against exercising jurisdiction. Balancing all three sub-factors, the Court finds that the fourth factor weighs against exercising jurisdiction.

V.      **Availability of Alternative Remedy**

The final factor the district court must consider is whether there is an alternative remedy available to the plaintiff. The Sixth Circuit stated "[a] district court should 'deny declaratory relief if an alternative remedy is better or more effective." *Flowers*, 513 F.3d at 562. First, a

federal declaratory plaintiff may seek a declaratory judgment in state court. Ky. Rev. Stat. Ann. § 418.040. Another possible remedy is an action for indemnity at the conclusion of the underlying action. The Sixth Circuit states again that there is a split in precedent "whether the possibility of seeking a declaratory judgment or indemnity action in state court counsels against the district court exercising jurisdiction." *Flowers*, F.3d at 562. The Court holds that "rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

Plaintiff has the option to file a declaratory judgment action in state court, to intervene in the underlying state court action, or to file a declaratory action with this Court after the conclusion of the state proceedings. This is an issue of state law, and the cases could be decided by the same state court judge. Further, it would be more efficient to have both actions in the same court system. Finally, "declaratory judgment actions seeking an advance opinion on indemnity issues 'should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.'" *Grange Mutual*, 565 F. Supp. 2d at 791 (quoting *Bituminous*, F.3d at 812). Therefore, this factor weighs against exercising jurisdiction.

## VI. Balancing of the Factors

The Sixth Circuit has not yet indicated how these factors are to be balanced. *Flowers*, 513 F.3d at 563. "[D]istrict courts must rely on the 'unique and substantial' discretion granted to them by the Declaratory Judgment Act." *Grange Mutual*, 565 F. Supp. 2d at 791 (quoting *Flowers*, 513 F.3d at 563). In this case, almost every factor weighs against this Court exercising jurisdiction. The factual issues regarding causation prevent this Court from being able to fully decide the issue of indemnity. Therefore, this Court declines to exercise jurisdiction and this

11

matter must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

An appropriate order shall issue.